UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROBERT D. DONALDSON,

                            Plaintiff,

            -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                            Defendant.
--------------------------------------------------------X

FILED
CLERK

1:39 pm, Oct 04, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-2000 (ADS)

**APPEARANCES:**

**Meltzer, Fishman, Madigan & Campbell**
*Attorneys for the Plaintiff*
225 Broadway, Suite 2605
New York, NY 10007
        By:    Edward J. Madigan, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
        By:    Matthew Silverman, Special Assistant United States Attorney

**SPATT, District Judge**:

        On April 6, 2017, Robert D. Donaldson (the "Plaintiff" or "Donaldson") commenced this

appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final

determination by the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social

Security Administration (the "Defendant" or the "Commissioner"), that he is ineligible to receive

disability insurance benefits.

        Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil

Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings.  For the reasons

that follow, the Plaintiff's motion is denied in its entirety, and the Defendant's motion is granted in its entirety.

## I. BACKGROUND

On May 29, 2013, the Plaintiff applied for disability insurance benefits under the Act, alleging that he has been disabled since December 27, 2010. The Plaintiff claims that he is disabled primarily due to impairments impacting his neck, left shoulder, right arm, back, and right leg.

His claim was initially denied on December 5, 2013, and he requested a hearing. Donaldson appeared with counsel before Administrative Law Judge (the "ALJ") Jacqueline Haber Lamkay on August 27, 2015. On October 2, 2015, ALJ Lamkay issued a partially favorable written decision in which she found that although the Plaintiff was not entitled to disability benefits under the Act through August 17, 2015, he became disabled pursuant to Rule 202.06 of the Medical-Vocational Guidelines (the "Guidelines") as of August 18, 2015, when the Plaintiff's age category changed, pursuant to the Guidelines.

The Plaintiff sought a review by the Appeals Council. On February 6, 2017, the Appeals Council denied his request. The ALJ's decision became final upon the Appeals Council's denial of the Plaintiff's request for review.

On April 6, 2017, the Plaintiff filed the instant action. The parties submitted the matter to the Court as fully briefed on December 26, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A.  The Standard for Benefits Under the Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520.  *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).  The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa,* 168 F.3d at 77.  *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.").   "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

**B. The Standard of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179-81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g). *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case *de novo*." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial

evidence, are conclusive," *id*. (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d

Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**C. Application to the Facts of this Case**

The Plaintiff contends that he was entitled to disability insurance benefits beginning on December 23, 2010 for two primary reasons: (1) the ALJ improperly evaluated the medical evidence as it pertains to determining whether the Plaintiff met or equaled the Listed Impairments; and (2) the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence.

### 1. As to Whether Substantial Evidence Supports a Finding that the Plaintiff's Injuries Meet or Equal the Requirements of a Listed Impairment

The Plaintiff claims that his shoulder and back maladies meet or equal the requirements of Listed Impairment 1.02 – major dysfunction of a joint, 1.03 – reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, 1.04 – disorders of the spine, 1.08 – soft tissue injury and 11.08 – spinal cord disorders. The Defendant contends that substantial evidence supports the ALJ's conclusion that his impairments did not meet or equal any Listed Impairment. For the reasons set forth below, the Court agrees with the ALJ's determination.

At step three, the ALJ is required to determine whether the Plaintiff's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Appendix 1 of the regulations lays

out a number of impairments which, if possessed by a plaintiff, renders that person disabled under the Act. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990) (emphasis in original) (internal citations omitted).

An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). "The Commissioner will find that a claimant's impairment is medically equivalent to a Medical Listing if: (1) the claimant has other findings that are related to his or her impairment that are equal in medical severity; (2) the claimant has a 'closely analogous' impairment that is 'of equal medical significance to those of a listed impairment;' or (3) the claimant has a combination of impairments that are medically equivalent." *Valet v. Astrue*, No. 10-cv-3282 (KAM), 2012 WL 194970, at *13 (E.D.N.Y. Jan. 23, 2012) (quoting 20 C.F.R. § 404.1526(b)(1)–(3)). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

As the party claiming disability, it is the Plaintiff's burden "to demonstrate that his impairment (or combination of impairments) meets or is equal in severity to a listed impairment based on medical evidence." *Proper v. Comm'r of Soc. Sec.*, No. 1:12-CV-0098 (MAT), 2014 WL 7271650, at *11 (W.D.N.Y. Dec. 18, 2014) (internal citations omitted). "Plaintiff meets this burden by showing that he meets all of the specified criteria for the impairment set forth in the Listing." *Id*.

The ALJ ruled that Donaldson did not have any impairment that met the specified criteria. *See* R. at 14-15. While the ALJ evaluated the Plaintiff's injury for any Listed Impairment, she gave special consideration to 1.02, 1.03, 1.04 and 11.08. Specifically, the ALJ determined that

> [Section 1.02:] The claimant's bilateral knee and left shoulder impairments do not meet listing-level severity § 1.02 because there is no evidence of gross anatomical deformity of the hip, knees, shoulders, elbows or wrists and no medically acceptable imaging showing joint space narrowing, bony destruction or ankyloses of the affected joints resulting in inability to ambulate effectively or inability to ambulate or to perform fine and gross movements effectively.
>
> [Section 1.03:] [T]hough the claimant has degenerative joint disease of both knees with the need for right knee surgery, he is ambulate effectively[.]
>
> [Section 1.04:] Although the claimant has degenerative disc disease of the lumber and cervical spine, a thorough review of the medical evidence fails to reveal (a) neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss; (b) spinal arachnoiditis, requiring the need to change positions/posture more than once every two hours; nor (c) an inability to ambulate effectively.
>
> [Section 11.08:] [T]he severity of this listing is not met or medically equaled since the claimant does not suffer from disorganization of motor function (as defined in 11.04B).

R. at 14-15.

An injury that meets the requirements under Section 1.02 is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02. In addition, a plaintiff must also show an "inability to ambulate effectively" or "inability to perform fine and gross movements effectively." *Id*. In the instant case, the record does not demonstrate any gross anatomical deformities of the hip, knees, shoulders, elbows or wrists. Further, there is substantial evidence to support the ALJ's

finding that none of the Plaintiff's injuries resulted in an "inability to ambulate effectively" or "inability to perform fine and gross movements effectively."

An "inability to ambulate effectively" is

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. … Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b). An "inability to perform fine and gross movements effectively" is defined as the,

> [i]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(c).

Donaldson testified before the ALJ that he carries out much of the activities of daily living, including driving four times a week, shopping, cooking simple meals, going fishing, and housework. He is able to take public transportation, socialize and plants tomatoes and eggplants in his garden. The Plaintiff went on a cruise to St. Thomas and St. Martin in January 2015 and flew to St. Lucia for a week-long vacation within the past two years. *See* R. at 47-57. Dr. Chaim Shtock, a consultative examiner, noted that Donaldson arose from a chair without difficulty and

required no help changing or getting on or off the examining table.  *See* R. at 17.  Based on the record before the Court, Donaldson's disabilities do not prevent him from performing fine and gross movements effectively or ambulating effectively.

Given the medical evidence, the ALJ's ruling that despite his injuries, he was able to ambulate effectively and perform fine and gross motor movements effectively was appropriate. *See, e.g.*, *Richardson v. Astrue*, No. 10 Civ. 9356, 2011 WL 2671557 at *9 (S.D.N.Y. July 8, 2011) (plaintiff who took "public transportation without assistance," "climb[ed] stairs," and "perform[ed] various household chores" could ambulate effectively, even though he "walked with a 'Trendelenburg gait'" and "his ability to ambulate was moderately to severely impaired" (internal quotations omitted)), *report & recommendation adopted*, 2011 WL 3477523 (S.D.N.Y. Aug. 8, 2011*); Clark v. Astrue*, No. 09-CV-00841A(F), 2011 WL 710161, at *8 (W.D.N.Y. Jan. 13, 2011) ("[T]he record is devoid of substantial evidence that Plaintiff's irreparable left shoulder rotator cuff tear resulted in an inability to perform fine and gross movements effectively."), *report & recommendation adopted*, 2011 WL 710152 (W.D.N.Y. Feb. 22, 2011); *Rosado v. Astrue*, 713 F. Supp. 2d 347, 360 (S.D.N.Y.2010) (plaintiff who "had full range of motion in his ankles," "did not require an assistive device to walk," and did "his own shopping and [made] social visits to his son's home" was able to ambulate effectively).

Under Section 1.03, an injury that meets this listing is defined as: "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00132b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.03.  There is substantial evidence to support the ALJ's conclusion that Section 1.03 is inapposite, as it does not apply to the Plaintiff's medical condition due to his ability to "ambulate effectively"

"[I]n order to satisfy [Section 1.04], [a p]laintiff must establish that (1) []he has a disorder of the spine which compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by neuro-anatomic distribution of pain, limiting of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *McKinney v. Astrue*, No. 5:05-cv-0174, 2008 WL 312758, at *4 (N.D.N.Y. Feb. 1, 2008). In the instant case, based on correct legal principles and substantial evidence, ALJ Lamkay properly found that the Plaintiff's impairments did not meet or equal Section 1.04.

This conclusion is corroborated by the medical evidence in the administrative record. For example, the third requirement of Section 1.04 is "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." According to the medical records, the Plaintiff did not experience significant sensory loss, atrophy or motor loss during the insured period. Dr. Shtock's examinations showed no spasms as well as normal reflexes, sensation and motor skill strength. *See* R. at 398-401. Dr. Shtock also observed no evidence of a positive straight leg raising. *Id*. A review of the medical evidence confirms the ALJ's findings regarding Section 1.04.

Section 1.08 is described as a "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, … directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.08. Although the ALJ did not give special consideration to Section 1.08, substantial evidence exists to determine that Donaldson's injuries do not meet or medically equal the severity required. *See Hunt v. Astrue*, No. 07-CV-1029, 2009 WL 3076209, at *7 (N.D.N.Y. Sept. 23, 2009) ("While the ALJ did not

elaborate on his findings in the portion of his decision addressed to step 3, the record contains substantial evidence supporting the ALJ's determination that Plaintiff did not meet the requirements of [the] Listing."). "The Regulations make clear that functional loss, for musculoskeletal purposes, means either the 'inability to ambulate effectively' or the 'inability to perform fine and gross movements effectively.'" *Butler v. Berryhill*, No. 16-CV-06074 (FPG), 2017 WL 999205, at *4 (W.D.N.Y. Mar. 15, 2017). As discussed above, there is substantial evidence to conclude that the Plaintiff is able to ambulate effectively and perform fine and gross movements effectively. Accordingly, the Plaintiff has not provided sufficient evidence that he has suffered a functional loss.

Finally, the ALJ's conclusion that there was insufficient evidence to conclude that the Plaintiff's injuries met or were medically equal to the severity required under Section 11.08 was also proper. According to ALJ Lamkay, Donaldson's lack of disorganization of motor function precludes a favorable outcome regarding Section 11.08. The Court concurs. At the relevant time period, Section 11.08 required the Plaintiff to suffer from disorganization of motor function, which is defined as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Part 404, Subpt. P, App. 1 at § 11.04B. The ALJ noted that Dr. Shtock's examination revealed that Donaldson could get on and off the examination table without difficulty, that he had normal gait/station with full strength in her upper and lower extremities, and that he could heel/toe walk without difficulty. *See* R. at 17-18. The record demonstrates that Donaldson did not have the required significant and persistent disorganization of motor function in two extremities that disturbed his gross and dexterous movements or gait and station. The ALJ's finding that he did not meet Section 11.08 is therefore supported by substantial evidence.

The Plaintiff's sole remaining contention regarding Step 3 is that the ALJ failed to consider certain medical evidence that was allegedly favorable to him. However, "this is not a case 'in which we would be unable to fathom the ALJ's rationale in relation to the evidence in the record.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (quoting *Berry*, 675 F.2d at 469). ALJ Lamkay considered all of the relevant medical evidence and the record contained ample support for her conclusions.

A plaintiff may also find that, although his or her impairment does not meet the specific criteria of a Medical Listing, it still may be medically equivalent to one. To do so, the ALJ must determine that: "(1) the claimant has other findings that are related to his or her impairment that are equal in medical severity; (2) the claimant has a 'closely analogous' impairment that is 'of equal medical significance to those of a listed impairment;' or (3) the claimant has a combination of impairments that are medically equivalent." *Valet*, 2012 WL 194970, at *13 (internal citations omitted).

Here, the Court finds that the ALJ's conclusion that the Plaintiff did not have an impairment that meets or medical equals the requirements of Sections 1.02, 1.03, 1.04, 1.08 or 11.08 is supported by substantial evidence. As such, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) based on the ALJ's conclusion regarding step 3 is denied while the Defendant's motion for a judgment on the pleadings grounded in the same rationale is granted.

**2. As to Whether the ALJ Properly Assessed the Plaintiff's Residual Functional Capacity**

The ALJ determined that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following exceptions: no climbing of ladders, ropes or scaffolds, occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching or crawling, occasional overhead reaching with the left upper extremity, with the need to avoid concentrated exposure to

extreme cold, wetness, humidity, and hazards, and required the opportunity for brief, one to two minute changes of position every 30 minutes. *See* R. at 15. The Plaintiff contends that the ALJ's RFC determination improperly assessed the medical evidence and the Plaintiff's testimony. The Court disagrees.

### A. As to Whether the ALJ Properly Assessed the Medical Evidence

The Plaintiff claims that the ALJ's RFC finding did not properly assess the medical evidence presented by failing to take the entirety of the administrative record into account. The Court disagrees.

RFC is defined in the regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404 Subpt. P App. 2, § 200.00(c); *see also* 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting SSR 96–8p). It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 5:07-CV-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. § 404.1545), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

Under the fourth step of the sequential evaluation process, the ALJ reviews the RFC and compares it to the demands of his past relevant work. *See* 20 C.F.R. § 404.1520(f). If the Plaintiff is still able to perform the type of activities required by his past employment, he is deemed not to

be disabled. *See* 20 C.F.R. § 404.1520(e). Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by ... other substantial evidence...." 20 C.F.R. § 416.927(c)(2). When a treating source's medical opinion is not supported by substantial evidence, the opinion will not be afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ's RFC assessment is supported by the opinion of consultative examiner Dr. Shtock, Dr. Stewart's most recent opinion, and Dr. Mandelsohn's May 2013 examination, as well as the Plaintiff's own testimony. ALJ Lamkay determined that the Plaintiff had the RFC to

> perform light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b) except with no climbing of ladders, ropes or scaffolds; occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching or crawling; occasional overhead reaching with the left upper extremity; with the need to avoid concentrated exposure to extreme cold, wetness, humidity and hazards (such as dangerous moving machinery and unprotected heights) and requires the opportunity for brief, 1-2 minute changes of position every thirty minutes.

R. at 15. As defined in 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, … he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Dr. Shtock, a consultative examiner, performed an orthopedic consultative examination in November 2013. The examination revealed that Donaldson exhibited a normal gait/station, could arise from a chair without difficulty, required no help changing or getting on or off the examining table, exhibited negative straight leg raising bilaterally, had full grip strength and dexterity with his hands, had full range of motion of the elbows, forearms, wrists, fingers, hips, knees and ankles,

and full strength in his extremities. Dr. Shtock notes that Donaldson was unable to squat beyond 80% of the maximum, had decreased range of motion of the cervical spine, left shoulder and thoracolumbar spine as well as decreased light touch sensation in the lateral aspect of the right thigh, left ankle and right foot. R. at 17-18. As a result, Dr. Shtock opined that the Plaintiff had mild limitations with squatting, standing long periods, sitting long periods, and kneeling. Donaldson had mild to moderate limitation with walking long distances and moderate limitation with heavy lifting, crouching, frequent stair climbing, frequent bending and performing overhead activities with his left arm. R. at 18, 401.

It is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently. *Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In this circuit, the opinions of a consultative examiner may be provided great weight and establish substantial evidence supporting the ALJ's decision. *See Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235, 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) ("[T]he Second Circuit has made it clear that the opinions of State agency medical consultants … may constitute substantial evidence to support an ALJ's RFC determination."). If the consultative examiner's opinion is more consistent with the medical evidence than a treating physician's opinion, the ALJ may accord the consultative examiner's opinion greater weight. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he opinions of non-examining sources [can] override treating source's opinions provided they are supported by evidence in the record.").

The limitations recommended by Dr. Shtock are consistent with the ALJ's finding that an individual can perform light work. *See, e.g.*, *Vargas v. Astrue*, No. 10 Civ. 6306, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011). They are also consistent with Dr. Stewart's March 27,

2012 opinion, that found that the Plaintiff was "capable of a lighter duty position" than his prior job at UPS. This requires restrictions in lifting, pushing, or puling over 20 pounds, overhead lifting with his left arm, climbing, operating a vehicle, and repetitive movements of his left shoulder. R. at 278. The ALJ incorporated Dr. Stewart's recommended limitations pursuant to 20 § C.F.R. 404.1567(b), with the restriction that the Plaintiff is limited to only occasional overhead reaching with the left upper extremity and climbing of stairs/ramps, no climbing of ladders, ropes or scaffolds, and the avoidance of hazards. R. at 15. ALJ Lamkay also incorporated Dr. Mendelsohn's findings, which he noted during an examination in May 2013. Dr. Mendelsohn observed that the Plaintiff had a normal gait, full muscle strength and power in all extremities, normal reflexes, and normal coordination. R. at 17.

To the extent that the Plaintiff argues that the ALJ's RFC finding is inconsistent with the medical evidence in the record, this contention fails to take into account the entirety of the record. The ALJ appropriately relied upon the medical findings and opinions of the above-mentioned physicians as well as the testimony of the Plaintiff at the hearing. Accordingly, the Court finds that ALJ Lamkay's finding with respect to the Plaintiff's RFC was supported by substantial evidence.

### B. As to Whether the ALJ Properly Evaluated the Plaintiff's Credibility

The Plaintiff also argues that ALJ Lamkay failed to properly evaluate his credibility. To evaluate credibility,

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence.

In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205-06 (W.D.N.Y. 2005) (quoting *Murphy v. Barnhart*, No. 00 Civ. 9621, 2003 WL 470572, at *10-11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c))); *see also Wright v. Astrue*, No. 06-CV-6014, 2008 WL 620733, at *3 (E.D.N.Y. Mar. 5, 2008) (listing the same seven factors (citing SSR 96–7)); *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand."). The ALJ is not required to discuss all seven factors as long as the decision "includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight." *Felix v. Astrue*, No. 11-cv-3697, 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012) (citing *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546-47 & n.5 (S.D.N.Y. 2004)).

Here, the ALJ correctly determined that although the Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, his testimony concerning the intensity,

persistence, and limiting effects of his symptoms were not credible to the extent alleged. *See* R. at 16. ALJ Lamkay properly explained why she determined that the Plaintiff's credibility was limited. This decision was based on an evaluation of the administrative record, including examination of Donaldson's testimony. *Lewis v. Colvin*, 548 F. App'x 675, 677–78 (2d Cir. 2013) ("[T]he ALJ's determination that [the plaintiff] could perform light work is supported by [the doctor]'s assessment of mild limitations for prolonged sitting, standing, and walking, and direction that Lewis should avoid heavy lifting, and carrying. It is further supported by evidence in the record regarding Lewis's daily activity." (internal citations and quotation marks omitted)); *Cichocki*, 729 F.3d at 178 (finding that the ALJ properly relied on the claimant's reported daily activities, including walking her dogs and cleaning, which were consistent with the capacity to perform light work); *Poupore*, 566 F.3d at 307 (observing that the claimant's varied activities, including childcare, vacuuming, dishwashing, occasional driving, and using the computer, indicated that the claimant's allegations of disabling limitations were not fully credible).

Specifically, the ALJ noted that Donaldson's regular activities were inconsistent with his complaints. *See Perez v. Barnhart*, 440 F. Supp. 2d 229, 234-35 (W.D.N.Y. 2006) ("[T]he ALJ also properly relied in part on the testimony concerning plaintiff's daily activities, which was some evidence of plaintiff's physical capabilities." (collecting cases)); *Petti v. Colvin*, No. 13-cv-267, 2014 WL 6783703, at *10 (E.D.N.Y. Dec. 2, 2014) ("In assessing the claimant's credibility, the ALJ must consider … various regulatory factors including the claimant's daily activities[.]").

> Despite the above allegations, the claimant noted no difficulty with bathing, grooming/feeding himself or toileting. He admitted he prepared simple meals, drove a car, could go out alone, shopped in stores and noted no difficulty reaching or using his hands. … [H]e admitted he could drive, perform most of his activities of daily living, comprehend simple mathematics, use a cell phone, use a computer, fish, garden, prepare light meals, do laundry, perform light housework and use public transportation and had taken several vacations in the last two years.

R. at 16. ALJ Lamkay further observed that the Plaintiff testified at the hearing that his arms, hands and feet were responsible for his most severe concerns and issues related to his shoulder, sleep apnea, coronary artery disease, bilateral knees and bilateral carpal tunnel syndrome were secondary. The ALJ considered the Plaintiff's daily activities and properly found that the Plaintiff's allegations were not credible to the extent alleged.

While he testified that he experienced pain every day and suffered from headaches three times a week for six to seven hours at a time, the only medication he regularly took were ibuprofen and a cream. R. at 15-16. This conservative treatment regimen indicates that he is not as restricted by his ailments as he asserts. *See Church v. Colvin*, 195 F. Supp. 3d 450, 456-57 (N.D.N.Y. 2016); *Lovell v. Colvin*, 137 F. Supp. 3d 347, 354 (W.D.N.Y. 2015); *Cahill v. Colvin*, No. 12-cv-9445, 2014 WL 7392895, at *14 (S.D.N.Y. Dec. 29, 2014).

Accordingly, the Court holds that the ALJ's findings regarding the Plaintiff's subjective complaints are supported by substantial evidence. As such, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) based on the ALJ's RFC determination is denied while the Defendant's motion for a judgment on the pleadings based on the ALJ's RFC finding is granted.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety, and the Defendant's motion for judgment on the pleadings is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

October 4, 2018

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge